**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

PAUL DOUGLAS WERNER, #307577,

       Petitioner,

                                 Civil No: 06-CV-11217
                                 Honorable Gerald E. Rosen
                                 Magistrate Judge R. Steven Whalen

v.

ANDREW JACKSON,

       Respondent.

_____/

**OPINION & ORDER DENYING PETITION**
**FOR WRIT OF HABEAS CORPUS**

Petitioner, Paul Douglas Werner, is a state inmate currently incarcerated at Mound Correctional Facility in Detroit, Michigan. Petitioner was convicted at the conclusion of an Oakland County Circuit Court jury trial of second-degree murder, Mich. Comp. Laws §750.317; operating a motor vehicle while under the influence of intoxicating liquor (OUIL) causing death, Mich. Comp. Laws §257.625(4); OUIL causing serious impairment of a bodily function, Mich. Comp. Laws §257.625(5); and driving with a suspended license, second offense, Mich. Comp. Laws §257.904(1). Petitioner was sentenced to concurrent prison terms of twenty-five to forty years' imprisonment for the murder conviction, one hundred months to fifteen years for the OUIL causing death conviction, thirty-eight months to five years' imprisonment for the OUIL causing injury offense, and one year imprisonment for driving with a suspended license conviction. Petitioner has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. §2254. For the reasons that follow, the Court will deny the petition.

# I. BACKGROUND

The state appellate court in this case set forth underlying facts, which are presumed correct on habeas review, *see Monroe v. Smith,* 197 F. Supp.2d 753, 758 (E.D. Mich. 2001), *aff'd* . 41 Fed. App'x. 730 (6th Cir. 2002), as follows:

> On July 18, 1999, defendant became intoxicated and drove his pickup truck in the wrong direction on a busy freeway.  He collided head-on with a Jeep, killing the passenger and seriously injuring the driver.

*People v. Werner,* 254 Mich. App. 528, 530; 659 NW2d 688 (2002).

Petitioner filed an appeal of right and raised the following issue:

> I.  Must the murder conviction be reversed where insufficient evidence of malice was presented to support it.

Petitioner subsequently filed a supplemental brief on direct appeal raising six additional claims:

> I.  Defense counsel's one significant error deprived defendant of his due process right to present a substantial defense and constitutes the grievous and deficient representation of counsel under the state and United States Constitutions.

> II.  Charging and convicting defendant of both, second degree murder and OUIL causing death violates double jeopardy principles and constitutes an abuse of the prosecutor's charging discretion in violation of equal protection and due process of law.

> III.  Defendant was denied due process of law when the trial court illegally and unconstitutionally instructed the jury regarding the current reasonable doubt standard.

> IV.  Defendant was denied his state and United States Constitutional right to a fair trial by the trial court's erroneous admission of impermissible and massively prejudicial other acts evidence.

> V.  Defendant was deprived of his liberty without due process of law when the trial court denied his right to confrontation and precluded him from presenting evidence crucial to his defense.

2

VI.  Defendant was deprived of his liberty without due process of law where the cumulative effect of errors denied him a fair trial.

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences. *Id.* at 544.

Petitioner then filed an application for leave to appeal with the Michigan Supreme Court raising the following claims:

I.  Reversal of the second degree murder conviction is required where insufficient evidence was presented to prove the requisite element of malice and the trial court denied the motion for directed verdict.

II.  Convictions of second degree murder and OUIL causing death for the death of the same individuals violates double jeopardy principles.

III.  Mr. Werner's constitutional rights to equal protection and due process were violated when he was charged by the prosecutor under both a general statute and a specific statute for a single death.

IV.  Mr. Werner was deprived of his liberty without due process of law when the trial court gave a reasonable doubt jury instruction too broad to enable jurors to acquire a reasonably ascertainable standard for determining criminal liability.

V.  Mr. Werner was denied his constitutional rights to a fair trial pursuant to the Michigan and United State Constitutions when  the trial court erroneously admitted prejudicial other acts evidence.

VI.  Mr. Werner was deprived of his liberty without due process of law when the trial court denied his right to confrontation and precluded him from presenting evidence crucial to his defense.

VII.  Mr. Werner  was deprived of his liberty without due process of law where the cumulative effect of errors denied him a fair trial.

VIII.  Defense counsel's one significant error deprived Mr. Werner of his due process right to present a substantial defense and constitutes the ineffective assistance of counsel under the state and United States Constitution.

Petitioner's application for leave to appeal was denied.  *People v. Werner,* 468 Mich. 926; 664 NW2d 214  (2003).

Petitioner filed a motion for relief from judgment with the Oakland County Circuit Court raising the following issues: "(1) constructive denial of trial counsel for a litany of errors, (2) ineffective assistance of counsel and appellate counsel, (3) error in admitting other acts evidence, (4) error in allowing jurors to consider other acts evidence, (5) prosecutorial misconduct, (6) improper jury selection, and (7) judicial bias." ("Opinion and Order," dated 11/4/04, pg. 2). The motion was denied on November 4, 2004. Petitioner appealed the November 4, 2004 order in an application for leave to appeal with the Michigan Court of Appeals. Relief was denied. *People v. Werner,* No: 259282, (Mich. Ct. App. June 24, 2005). Petitioner filed an application for leave to appeal with the Michigan Supreme Court which was denied. *People v. Werner,* 474 Mich. 974; 707 NW2d 207 (2005).

Petitioner now seeks to file a writ of habeas corpus asserting the same claims presented in the state appellate courts, specifically, the same eight claims set forth above. Respondent has filed an answer to the petition asserting that habeas relief is not warranted in this case.

## II.  STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this court's habeas corpus review of state court decisions. Petitioner is entitled to the writ of habeas corpus if he can show that the state court's adjudication of his claim on the merits:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or


(2) resulted in a decision that was based on an unreasonable determination

4

of the facts in light of the evidence presented at the State court proceedings. 28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence." *Baze v. Parker,* 371 F.2d 310, 318 (6th Cir. 2004) (citing 28 U.S.C. §2254(e)(1)).

**III.  DISCUSSION**

5

## A.

## Sufficiency of Evidence

Petitioner asserts that there was insufficient evidence to sustain his conviction of second-degree murder. The Michigan Court of Appeals rejected this argument and found as follows:

> This is not a case where a defendant merely undertook the risk of driving after drinking. Defendant knew, from a recent prior incident that his drinking did more than simply impair his judgment and reflexes. He knew that he might actually become so overwhelmed by the effects of alcohol that he would completely lose track of what he was doing with his vehicle. If defendant knew that drinking before driving could cause him to crash on boulders in front of a house, without any knowledge of where he was or what he was doing, he knew that another drunken driving episode could cause him to make another major mistake, one that would have tragic consequences.

> Although there is no evidence regarding defendant's behavior between his departure from Charlie Parrish's house and the fatal collision, or regarding his state of mind just before the crash, we are satisfied that the prosecution met its burden by showing that defendant had a recent episode of an alcohol-induced blackout while driving, but that he nonetheless drank heavily while he was out with his vehicle. The trial court did not err in denying the motion for a directed verdict, and the evidence was sufficient to support defendant's conviction.

*Werner,* 254 Mich. App. at 533-34.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). However, the critical inquiry on review of the sufficiency of the evidence is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318 (1979).

6

This inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnotes omitted) (emphasis in original). This "standard must be applied with explicit references to the substantive elements of the criminal offense as defined by state law." *Id.* at n.16. "[N]ormally, pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the *Jackson* standard was contrary to or an unreasonable application of Supreme Court precedent." *Wolfe v. Bock,* 412 F.Supp.2d 657, 681 (E.D. Mich. 2006).

Because a claim of insufficiency of the evidence presents a mixed question of law and fact, this court must determine whether the state court's application of the *Jackson* standard was reasonable. *Dell v. Straub*, 194 F.Supp.2d 629, 647 (E.D.Mich. 2002). Section 2254(d) "mandates that federal courts give deferential review to state court decisions on sufficiency of evidence claims." *David v. Lavinge*, 190 F.Supp.2d 974, 985 (E.D.Mich. 2002) (internal citations omitted). The habeas court does not substitute its own judgment for that of the finder of fact. *See Alder v. Burt,* 240 F.Supp.2d 651, 661-62 (E.D. Mich. 2003). In a federal habeas proceeding, the scope of review of the sufficiency of evidence in a state criminal prosecution "is extremely limited and a habeas court must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state and defer to that resolution." *Terry v. Bock*, 208 F.Supp.2d 780, 794 (E.D. Mich. 2002).

7

Petitioner asserts that there was insufficient evidence to sustain a second-degree murder conviction.  Under Michigan law, the elements of second-degree murder are: "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *Werner,* 254 Mich. App. at 531 quoting *People v. v. Mayhew,* 236 Mich. App. 112, 125; 600 NW2d 370 (1999); *People v. Goecke,* 457 Mich. 442, 463-64; 579 NW2d 868 (1998).

Petitioner asserts that there was insufficient evidence to prove the requisite element of malice of a second-degree murder offense.  However, the prosecutor presented the following evidence: (1) Petitioner's blood alcohol level was .22 grams of alcohol per 100 milliliters of blood; (Tr. Vol. II, at 139); (2) Petitioner was driving the wrong way on Interstate 75, (Tr. Vol. II, 75,83, 93, 107, 156-57); (3) Petitioner made no attempts to avoid the accident, i.e.,  by slowing down, (Tr. Vol. II, at 152); (4)  Petitioner admitted that he knew the degree of risk when driving while intoxicated, (Tr. Vol. III, at 25, 29, 34); (5) Petitioner knew he had a drinking problem and did not seek treatment, (Tr. Vol. III, 27); (6) Petitioner knew that he was subject to suffering from "blackouts" when he drinks alcohol, (Tr. Vol. III, 48); and (7) Petitioner has been involved in drunk driving accidents in the past, (Tr. Vol. III, 173; Tr. Sent. at 23-24).

Petitioner claims that he "did nothing more than drive drunk, which in and of itself is insufficient for malice and he drove the wrong way for a few seconds" (Pet. at 10).  He further asserts that there is "[n]othing in the record [which] establishes that Petitioner taking a drink would cause harm."  Finally, he states that "[t]he drinking occurred hours before the accident and the collision occurred within seconds of becoming turned around."  *Id* at 9-10. "The testimony revealed that he apparently drove straight in the lane and appeared to be

8

unaware of oncoming traffic, since there was no swerving or breaking on his part." *Id.* at 10.

It is the job of the jury and not the court sitting on habeas review to resolve conflicts in the evidence, and this Court must presume that the jurors resolved those conflicts in favor of the prosecution. *Jackson,* 443 U.S. at 326.

Given the testimony adduced at trial, the Court finds that the Michigan Court of Appeals' decision to reject Petitioner's insufficiency of evidence argument was not an unreasonable application of law. To the extent that Petitioner challenges the inferences that the jury drew from the testimony presented at trial and the weight to be accorded certain pieces of evidence, he is not entitled to relief. *Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir. 1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir. 1992). A habeas court must defer to the factfinder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys,* 319 F.3d 780, 788-89 (6th Cir. 2003). "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Id.*

A rational jury could well choose to credit the testimony of the several witnesses for the prosecution who either witnessed the accident or had some familiarity with Petitioner's history of consuming alcohol, and to discount or reject outright Petitioner's version of events. The court on habeas review must in such cases defer to the jury's finding, made beyond a reasonable doubt, that the more credible witnesses supported the prosecution's charges. See *Matthews,* 319 F.3d at 788-89.

In short there was sufficient evidence presented from which the jury could infer that

9

Petitioner acted with malice aforethought sufficient to constitute second degree murder. Accordingly the Michigan Court of Appeals' resolution of this claim was not an unreasonable application of *Jackson v. Virginia,* and the court should conclude that Petitioner is not entitled to habeas relief on this claim.

**B.**

**Double Jeopardy**

Petitioner claims that his convictions of second-degree murder and OUIL causing death is a violation of the Double Jeopardy Clauses of the federal and state constitutions. The Michigan Court of Appeals rejected Petitioners' claim, holding as follows:

> A dual prosecution and conviction of a higher offense and a lesser cognate offense are permissible where the Legislature intended to impose cumulative punishment for similar crimes, even if both charges are based on the same conduct . . .  If the Legislature intended for the OUIL causing death statute to enforce societal norms that are distinct from the societal norms enforced by the involuntary manslaughter statute (grossly negligent conduct), it clearly also intended the OUIL statute to enforce societal norms other than those enforced by the second-degree murder statute (proscribing wanton conduct likely to cause  death or great bodily harm).  Moreover, the OUIL causing death statute and second-degree murder statute each contain an element not found in the other.  The OUIL causing death statute includes the element of operating a motor vehicle with a specified blood alcohol level, but not the element of malice; the converse is true of the second-degree murder statute. Accordingly, defendant's convictions of both second-degree murder and OUIL causing death do not violate the Double Jeopardy Clauses.

*Werner,* 254 Mich. App. at 535-36 (internal citations omitted).

The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Double Jeopardy Clause provides three basic protections: "[It] protects against a second prosecution for the same offense after acquittal. It protects against a

10

second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted). "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense." *Shiro v. Farley*, 510 U.S. 222, 229 (1994).

It is well established that the Double Jeopardy Clause does not prohibit a state from defining conduct to constitute two separate criminal offenses. *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983) (finding that when "a legislature specifically authorizes cumulative punishments under two statutes, . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial"). In the case at hand, the Michigan courts have found that the legislature specifically intended cumulative punishment under both second degree murder and OUIL causing death. "The Legislature's intent was to permit the imposition of separate convictions and punishments for both [second degree murder] and OUIL causing death." See *People v. Kulpinski*, 243 Mich. App. 8, 18-24; 620 N.W.2d 537 (2000).

The Court of Appeals in *Kulpinski* further found that "the societal norm that the OUIL causing death statute seeks to address – intoxicated driving – is different from the societal norm addressed by the crime of involuntary manslaughter, which conceivably encompasses a wide variety of behaviors constituting gross negligence and which conceivably encompasses a wide variety of behaviors constituting gross negligence has no such intoxication requirement at all." *Id.* at 544. The Michigan court's determination is binding on this Court. *Banner v. Davis*, 886 F. 2d 777, 780 (6th Cir. 1989) ("once a state court has determined that the state legislature intended cumulative punishments, a federal

11

habeas court must defer to that determination").

Even under the stricter interpretation of double jeopardy Petitioner's claim would fail, as each of the two charges requires a proof distinct from the other. See *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (holding that "if the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not"). OUIL causing death under Mich. Comp. Laws § 257.625(4) requires "a person, whether licensed or not, who operates a motor vehicle [on public roads while intoxicated] and by the operation of that motor vehicle causes the death of another person. Mich. Comp. Laws § 257.625(4).  Under Michigan law, the elements of second degree murder are: "(1)  a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. Thus, conviction under OUIL causing death requires proof of the defendant's operation of a motor vehicle, presence on public  roads and intoxication; second degree murder requires proof of malice.  Each requires proof that the other does not, and therefore the conviction satisfies the *Blockburger* test.  Because the conviction of second degree murder and OUIL causing death does not violate the Double Jeopardy clause, this claim is meritless and is therefore denied.

**C.**

**Equal Protection & Due Process Violation Due to the Imposition
of Criminal Charges under General and Specific Statutes**

Petitioner maintains that the prosecutor abused his discretion when he charged

Petitioner under the second-degree murder statute and the OUIL causing death statute. Petitioner asserts that the prosecutor was obligated to charge Petitioner under a more

recent and specific statute, i.e., the OUIL statute as opposed to the general statute that imposes harsher punishment, i.e., the second degree murder statute.  The Michigan Court of Appeals disagreed and stated as follows:

> We also find no abuse of prosecutorial discretion in the prosecution's decision to pursue charges under both the second-degree murder statute and the OUIL causing death statute.  Defendant misstates the law when he claims that he should have been charged only under the OUIL statute because it is the more specific and more recently enacted statute.  The OUIL causing death statute does not merely carve out an exception to the second-degree murder statute; it enforces distinct societal norms and it includes an element not present in the second-degree murder statute.

*Werner,* 254 Mich. App. at 536-337.

From a federal perspective, generally, a prosecutor has broad discretion in deciding when and what to prosecute.  *Bordenkrcher v, Haynes* 434 U.S. 357, 364 (1978).  "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense described by statute, the decision whether or not to prosecute, and what charge to file . . .  generally rests entirely in the [prosecution's] discretion." *Id.*  "[A] defendant has no constitutional right to elect which applicable federal statutes shall be the basis of his indictment or prosecution.  *United States v. Batchelder,* 442 U.S. 114, 124 (1979).


From a state court perspective, if two statutes prohibit different conduct (i.e., an additional element is required to convict the defendant  of one crime but not the other) the prosecutor has the discretion to charge under either statute.  *People v. Peach,* 174 Mich. App. 419; 437 NW2d 9 (1989).  In this case there was substantial support for Petitioner  to be arrested under either the second degree murder statute or the OUIL statute. Moreover, Petitioner has not demonstrated how his due process and/or equal protection rights have

13

been violated by the prosecutor's decision to charge in the manner in which it was done. Habeas relief is not warranted relative to this claim.

### D.

### Reasonable Doubt Jury Instruction

Petitioner contends that the trial court erred in issuing the reasonable doubt jury instruction by weakening the standard and "requiring the jurors to make certain their doubts are "fair." *Werner,* 254 Mich. App. at 537.  Petitioner's claim however, is procedurally defaulted because he did not object to the reading of the jury instruction at trial.

A habeas court generally is barred from reviewing a state prisoner's federal claims where the prisoner has defaulted those claims in state court pursuant to an independent and adequate state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Even if the claim is procedurally defaulted, the Court finds it more efficient to consider the merits of the claim than to perform a procedural default analysis.  The alleged procedural default, therefore, is excused.  The question on habeas review of a jury instruction is not whether the instruction was "undesirable, erroneous, or even 'universally condemned.'" *Cupp v. Naughten,* 414 U.S. 141, 146 (1973).  Instead, before a federal court may overturn a state conviction, the instruction must have "violated some right which was guaranteed to the defendant by the Fourteenth Amendment" or the ailing instruction by itself must have "so infected the entire trial that the resulting conviction violates due process." *Id.* at 146-47.

The instruction that is being challenged reads in pertinent part:

> If you find that the Prosecutor has not proven every element beyond a reasonable doubt, then you must find the Defendant not guilty.  A reasonable doubt is a fair, honest doubt growing out of the evidence or the lack of evidence.  It is not merely an imaginary or a possible doubt, but a doubt

14

based on reason and common sense.  A reasonable doubt is just that, a
doubt that is reasonable after a careful and considered examination of the
facts and circumstances of this case.

(Tr. 3/7/00, at 96-97).

As previously stated, Petitioner contends that the trial court erred in issuing the

reasonable doubt jury instruction by weakening the standard.  The Michigan Court of

Appeals rejected Petitioner's argument and stated as follows:

> This Court has already considered and rejected the claim that the transition
> from CJI 3:1:04 to CJI2d 3:2 weakened the concept of reasonable doubt.
> Moreover, both the current and former instruction state that  the juror's doubt
> must be "fair," so this is not a new requirement as defendant suggests.
> Consequently, we find no plain error in the trial court's instruction.[1]

*Werner,* 254 Mich. App. at 538.  The Constitution, however, does not require any particular

words in advising a jury of the prosecutor's burden of proof "so long as the court instructs

the jury on the necessity that the defendant's guilt be proven beyond a reasonable doubt."

*Victor v. Nebraska,* 511 U.S. 1, 5 (1994).  "Rather, 'taken as a whole, the instructions

[must] correctly conve[y] the concept of reasonable doubt to the jury'."  *Id.,* quoting *Holland

v. United States,* 348, 121, 140 (1954).

The  United  States  Court  of  Appeals  for  the  Sixth  Circuit  has  upheld  the

constitutionality of the standard instruction used at Petitioner's trial.  See *Binder v. Stegall,*

198 F.3d 177, 178-79 (6th Cir.1999).  The Sixth Circuit stated in *Binder* that, when viewed

as a whole, the instruction "adequately conveys the 'concept' of reasonable doubt" and that

---

[1]Because this issue was not preserved with an appropriate  objection at trial, the
state appellate court reviewed the claim for plain error.  *People ve. Carines,* 460 Mich.
750, 763; 597 NW2d 130 (1999).

its "circularity and possible ambiguity does not render the instruction constitutionally infirm."

*Id.* at 179.  The instruction also "does not suggest to the jury a lowering of the government's

burden of proof."  *Id.*  In light of *Binder,* Petitioner's claim has no merit.

### Admission of Other Acts Evidence

Petitioner asserts that the trial court's admission of evidence regarding a drunken

driving incident involving Petitioner, which occurred on June 23, 1999, was prejudicial and

irrelevant.  The Michigan Court of Appeals did not find this argument persuasive stating as

follows:

> The trial court properly admitted the evidence of defendant's prior drunken
> driving incident under [the] four-pronged test [under *People v. VanderVliet,*
> 444 Mich. 52, 55; 508 NW2d 114 (1993)].  First, the evidence was admitted
> for a proper purpose . . . [to show] that defendant knew that heavy drinking
> could lead to a blackout, and that a blackout could lead to defendant's driving
> without any understanding of what he was doing.  The fact that such an
> episode occurred only three weeks before the charged offense was highly
> material to the proper purpose of showing defendant's knowledge of the
> dangers of driving while intoxicated.
>
> Regarding the second prong, the evidence was relevant.  The fact that
> defendant had previously experienced an alcohol-induced blackout while
> driving made it more probable than not that he was aware this could happen
> to him.  Regarding the third prong, the probative value outweighed the
> danger of unfair prejudice.  The prosecution presented evidence that
> defendant drove the wrong way down a busy freeway at night and collided
> head-on with another vehicle, killing a twenty-two year old woman and
> seriously injuring a young man.  Compared to this tragic incident, evidence
> that defendant was involved in a prior single-vehicle accident with no injury
> to anyone was not unduly prejudicial.  Finally, regarding the fourth prong, the
> trial court gave an appropriate limiting instruction by stating to the jury that it
> "must not  . . .  decide that it shows that the Defendant is a bad person or
> that he is likely to commit crimes."  Accordingly, the trial court did not abuse
> its discretion in admitting evidence of the prior incident.

*Werner,* 254 Mich. App. at 539-40.

It is well-established that "federal habeas corpus review does not lie for errors of

state law." *Estelle v. McGuire,* 502 U.S. 62,67-68 (1991)("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.")  "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law . State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins,* 991 F.2d 1218, 1223 (5th Cir. 1993).   The Sixth Circuit has held that "[i]n a federal habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law." *Long v. Smith,* 663 F.2d 22, 23 (6th Cir. 1981).  "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow,* 25 F.3d 363, 370 (6th Cir. 1994).

"Generally, state court evidentiary rulings cannot rise to the level of due process violations unless they offend [ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id* (internal quotation omitted). There exists no clearly established Supreme Court precedent holding that a state violates due process by permitting propensity evidence through the admission of other bad acts evidence.  *Id.*  The Sixth Circuit has noted that the Supreme Court has addressed the admission of other acts evidence in the context of the Federal Rules of Evidence, but has not addressed the issue in constitutional terms.  *Id.* at 513.  Thus, the state court's decision is not contrary to or an unreasonable application of Supreme Court precedent.

**F.**

17

**Exclusion of Evidence**

Petitioner sought to introduce evidence that the decedent was not wearing a seat belt at the time of the collision in an effort to show that Petitioner's conduct was not the substantial cause of decedent's death. The trial court did not permit the admission of the evidence.  The Michigan Court of Appeals agreed with the trial court's ruling on the matter and found as follows:

> [T]he decedent's death in the instant case was not remote from the collision . . .  where the facts actually showed that wearing a seatbelt might have changed the outcome of the accident, the facts here do not show that the decedent could have affected the course of events by wearing a seat belt.

> [E]vidence of the decedent's failure to use a seat belt would be relevant only where the defendant could show that the failure was the sole cause of harm to the decedent. . . .  The trial court properly excluded the evidence of the decedent's failure to wear a seatbelt.

*Werner,* 254 Mich. App. at 543.

"While the Constitution prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain factors such as unfair prejudice, confusion, of the issues, or potential to mislead the jury."  *Holmes v. South Carolina,* 547 U.S. 319, 326 (2006).  Even when a court erroneously excludes defense evidence, "'[w]hether the exclusion of [witnesses'] testimony violated [defendant's] right to present a defense depends upon whether the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist." *United States v. Blackwell,* 459 F.3d 739, 753 (6th Cir. 2006) (alterations in original).

The right of an accused to present a defense has long been recognized as a

18

"fundamental element of due process." *Washington v. State,* 388 U.S. 14, 19 (1967). However, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer,* 523 U.S. 303, 308 91998). Indeed, "[a] defendant's interest in presenting  . . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id.* (internal quotations omitted).

In this case, not only has Petitioner failed to demonstrate that his constitutional rights have been denied as a result of the omission of this seat belt evidence, but Petitioner has also failed to show that his evidence is accurate.

## G

### Cumulative Error

Petitioner argues that the cumulative effect of the trial court errors resulted in his conviction.   The Michigan Court of Appeals rejected Petitioner's argument stating: "because we have not found any errors, this issue is without merit." The Sixth Circuit noted that the Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002). Petitioner is not entitled to habeas relief.

## H.

### Ineffective Assistance of Trial & Appellate Counsel

Petitioner asserts that his trial attorney was deficient in several respects: (1) failed to challenge competency of the prosecution's accident reconstruction expert; (2) failed to plead Petitioner to a lesser offense; (3) failed to place certain objections on the record; (4) failed to present certain evidence; (5) failed to investigate; and (6) failed to secure an expert

19

witness. Petitioner further claims the "[a]ppellate counsel was ineffective for not recognizing and raising these issues on direct appeal." (Pet. at. 29).

### 1.  Procedural Default

Petitioner first raised the ineffective assistance of trial and appellate counsel claims in his motion for relief from judgment. The trial court denied relief pursuant to Michigan Court Rule 6.508(D)(3). The court concluded that Petitioner did not establish cause and prejudice for previously failing to raise the challenges to his conviction. The Michigan appellate courts also relied upon Michigan Court Rule 6.508(D) in denying Petitioner leave to appeal the denial of his motion for relief from judgment. The Michigan courts thus "clearly and expressly" relied upon a state procedural rule in dismissing his claims.

In his habeas pleadings, Petitioner asserts cause to excuse his procedural default. On collateral review in the Michigan courts, Petitioner also alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. If Petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate that his appellate counsel was ineffective, a petitioner must show *inter alia* that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). Given that the cause and prejudice inquiry merges with an analysis of the merits of Petitioner's defaulted claim, the Court concludes that it would be most efficient to simply consider the merits of the claims.

### 2.

### Trial Counsel

20

To show that Petitioner was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court sets forth the two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland,* 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland,* a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311-12 (6th Cir.

21

1996).  Under *Strickland,* a court must presume that decisions by counsel as to whether to call or question witnesses are matters of trial strategy.  See *Hutchinson v. Bell,* 303 F.3d 720, 749 (6th Cir. 2002).

As set forth above, Petitioner lists a myriad of omissions, failures and alleged deficiencies in trial counsel's legal representation.  However, aside from listing these claims, Petitioner fails to show that counsel's alleged errors were so serious that he was not functioning as counsel as guaranteed by the Sixth Amendment.  Petitioner further fails to demonstrate how counsel's alleged deficient performance prejudiced his defense to the point of not receiving a fair trial.

First, Petitioner claims that trial counsel failed to challenge the competency of the prosecution's accident reconstruction expert.  That is the extent of his argument with no showing of how such a challenge would have resulted in a different outcome at trial.

Second, Petitioner asserts  that trial counsel  failed to plead Petitioner to a lesser offense.  This argument dovetails with Petitioner's claims that trial counsel did not secure an expert witness and he failed to conduct a proper investigation.  Petitioner maintains that his intoxication was involuntary because it resulted from a combination of Tylenol 3 and alcohol.  His position is that he was not aware that the Tylenol 3 and alcohol combination would result in him being in such an extreme state of intoxication.  Therefore, Petitioner argues as follows: (1) he did not become intoxicated voluntarily and should have been pled down to a lesser offense; (2) trial counsel should have secured an expert witness to testify about the Tylenol 3 / alcohol combination and how being in that state of intoxication negates the malice aforethought element required to commit second degree murder; and (3)  trial counsel did not investigate this possible mitigating circumstance.

22

To demonstrate deficient performance or prejudice resulting from a failure to investigate, a petitioner must "make some showing of what evidence counsel should have pursued and how such evidence would have been material." *Hutchinson v. Bell,* 303 F.3d 720, 748 (6th Cir. 2002). "[T]here is no need to show that the evidence that might have been discovered would have been helpful - only that a proper judgment could not be made without the investigation when failure to investigate is thought to be sufficiently serious." *Poindexter v. Mitchell,* 454 F.3d 564, 588 (6th Cir. 2006) (Boggs, C.J., concurring). This argument is speculative at best. Petitioner has not demonstrated that his trial counsel did not employ the investigative strategies that Petitioner urges should have been undertaken.

To present a viable ineffective assistance of counsel claim based upon an alleged failure by counsel to call a witness to testify at trial, Petitioner must make an affirmative showing as to the identity and availability of the witness to testify, the details of what the uncalled witness would have testified to, and that the testimony of the uncalled witness would have produced a different more favorable result at trial. *Malcum v. Burt,* 276 F.Supp.2d 664, 679 (E.D. Mich. 2003). There must be some representation in the record or the petition of the contribution a missing witness could have made, to assess, at a minimum, the prejudice prong of *Strickland.* Petitioner has failed to make such a showing.

Finally, Petitioner claims that trial counsel failed to place certain objections on the record This argument is broad and vague. It fails to detail the nature of the objections that allegedly should have been made and how the trial would have concluded with a different result, but for trial counsel's failure to place these objections on the record.

Accordingly, Petitioner has failed to show that he received ineffective assistance of counsel. Thus, habeas relief is not warranted.

23

**2.**

**Appellate Counsel**

Although the Sixth Amendment  right to counsel does not require an appellate attorney to raise every non-frivolous issue on appeal, an attorney who has presented strong but unsuccessful claims on appeal may nonetheless deliver a deficient performance by omitting  an issue (i.e., dead-bang winner) that obviously would have resulted in reversal on appeal.  See *Meade v. Lavigne,* 265 F.Supp.2d 849, 870 (E.D. Mich. 2003).

In order for Petitioner to prevail on his ineffective assistance of appellate counsel claim, he must show that the purported issues for appellate review are meritorious.   To show prejudice in the context of an appellate counsel claim, Petitioner must show that his

claim would have succeeded on appeal.  See *Smith v. Robbins,* 528 U.S. 259, 285-86 (2000).

 It is well-established that a criminal defendant does not have a constitutional  right to have appellate counsel raise  every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.  See *Jones v. Barnes,* 463 U.S. 745, 754 (1983).  The *Jones* Court explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the   . . .  goal of vigorous and effective advocacy . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.

Based upon the analysis set forth above, Petitioner's purported issues for appellate

review are not meritorious.  Accordingly, the Court concludes that Petitioner is not entitled

to habeas relief on this claim.

## IV.  CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas

corpus is DENIED.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  March 30, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record
on March 30, 2009, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager